## The Truth is Revealed

39. On August 14, 2003, Clean Harbors issued a press release announcing its financial results for the second quarter of 2003. The Company reported that it suffered a net loss of ($6.8) million or ($0.57) per share. Defendant McKim commented on the results stating in pertinent part as follows:

> While we exceeded our quarterly revenue guidance, our bottom-line results were below our expectations as a result of substantial volume shortfalls in our landfill business and other softness in waste disposal volumes into our facilities in the second quarter. The drop in volumes to these facilities is an industry-wide phenomenon that our competitors, as well as our remediation and engineering clients are all experiencing.
>
> We also continued to experience a reduction in revenues from our distributors and brokers due to the increased financial pressures they are facing... We expect these volumes to continue to be constrained because of the uncertain economic status of some of our traditional brokers and our conservative policy of not incurring any substantial credit risks with these customers. In addition to the significant volume shortfall and a competitive market environment, our bottom-line results were affected by higher-than-expected health care costs, the negative impact associated with the strengthening Canadian dollar on U.S. dollar denominated sales in Canada, the settlement of a state sales tax audit and final settlement of outstanding invoicing issues with Safety-Kleen. In total, these four additional factors affected our bottom-line by over $4 million in the quarter.
>
> We are intensifying our program to control expenses and eliminate costs... Furthermore, we are continuing our integration efforts of the CSD assets acquired from Safety-Kleen. We are accelerating the internalization of select transportation and waste disposal functions - steps we previously anticipated taking next year. We are also currently reviewing our network of plants and facilities for areas to further streamline our organization and increase efficiencies. Finally, we are taking more aggressive steps to grow our core revenues, increase EBITDA and regain profitability as quickly as possible. We are seizing opportunities we have identified in several key vertical markets by hiring additional sales personnel during the third quarter.

40. Following this announcement, the price of Clean Harbors common stock declined from $9.50 per share to $6.23 per share, a one-day drop of 34% on extremely heavy trading volume.

**Undisclosed Adverse Information**

41.    The market for Clean Harbors' common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Clean Harbors common stock traded at artificially inflated prices during the Class Period. The artificial inflation continued until August 14, 2003. Plaintiff and other members of the Class purchased or otherwise acquired Clean Harbors' common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Clean Harbors, and have been damaged thereby.

42.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Clean Harbors common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as detailed herein.

43.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Clean Harbors' financial performance and condition and prospects for continued future growth. These material misstatements and omissions created in the market an unrealistically positive assessment of Clean Harbors and its prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted

17

in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus leading to their losses when the illusion was revealed, and the market was able to accurately value the Company.

## ADDITIONAL SCIENTER ALLEGATIONS

44.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Clean Harbors, their control over, and/or receipt and/or modification of Clean Harbors' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Clean Harbors, participated in the fraudulent scheme alleged herein.

45.     In addition, defendants' scienter is further evidenced by the fact that Clean Harbors insiders stood to benefit, and did benefit, personally and concretely from the scheme alleged herein, by selling their personally held Clean Harbors common stock at artificially inflated prices. As discussed above, defendant McKim entered into a variable forward pricing contract for the sale of up to 200,000 shares of Clean Harbors common stock that allows him to retain voting rights and to enjoy potential upwards movement in the stock price while limiting his risk of a stock drop. Because the pricing terms were pegged to the price at which the stock was trading at the time of signing, defendant McKim was strongly motivated to artificially inflate the price of the Company's common stock. In addition to defendant McKim, other Clean

Harbors insiders sold shares of the Company's stock at artificially inflated prices, as evidenced by the following tables, providing additional motivation for defendants to engage in the fraud alleged herein:

David M. Parry, Vice President

| Date of Trade | # of Shares | Price/Share ($) | Total Trade ($) |
|---|---|---|---|
| 1/13/03 | 11,000 | 15.30 | 168,255 |

Eugene A. Cookson, President: Site Service Group

| Date of Trade | # of Shares | Price/Share ($) | Total Trade ($) |
|---|---|---|---|
| 12/26/02 | 25,000 | 16.04 | 401,000 |
| 12/30/02 | 7,000 | 16.00 | 112,000 |
| 1/9/03 | 3,300 | 16.00 | 52,800 |
| 1/9/03 | 16,700 | 16.00 | 267,200 |
| 1/10/03 | 8,700 | 16.13 | 140,326 |
| 1/10/03 | 20,000 | 16.13 | 322,590 |
| TOTAL | 80,700 | Avg = 16.05 | 1,295,916 |

William Geary, Executive Vice President

| Date of Trade | # of Shares | Price/Share ($) | Total Trade ($) |
|---|---|---|---|
| 12/2/02 | 11,300 | 15.44 | 174,472 |
| 12/2/02 | 113,000 | 15.11 | 1,744,720 |
| 1/10/03 | 7,400 | 15.56 | 115,144 |
| 6/6/03 | 2,500 | 9.87 | 24,675 |
| TOTAL | 134,200 | Avg = 15.34 | 2,059,011 |

### Applicability Of Presumption Of Reliance: Fraud-On-The-Market Doctrine

46. At all relevant times, the market for Clean Harbors' common stock was an efficient market for the following reasons, among others:

(a) Clean Harbors' stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Clean Harbors filed periodic public reports with the SEC and the NASDAQ;

(c) Clean Harbors regularly communicated with public investors <u>via</u> established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Clean Harbors was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

47. As a result of the foregoing, the market for Clean Harbors' common stock promptly digested current information regarding Clean Harbors from all publicly available sources and reflected such information in Clean Harbors' stock price. Under these circumstances, all purchasers of Clean Harbors' common stock during the Class Period suffered similar injury through their purchase of Clean Harbors' common stock at artificially inflated prices and a presumption of reliance applies.

## **NO SAFE HARBOR**

48. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded

herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Clean Harbors who knew that those statements were false when made.

## FIRST CLAIM

### Violation Of Section 10(b) Of
### The Exchange Act Against And Rule 10b-5
### Promulgated Thereunder Against All Defendants

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (ii) cause plaintiff and other members of the Class to purchase Clean Harbors' common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

51. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Clean Harbors' common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Clean Harbors as specified herein.

53. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Clean Harbors' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Clean Harbors and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Clean Harbors common stock during the Class Period.

54. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the

Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

55. The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Clean Harbors' operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Clean Harbors' common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of Clean Harbors' publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of

the Class acquired Clean Harbors common stock during the Class Period at artificially high prices and were damaged thereby.

57.   At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known the truth regarding Clean Harbors' financial results, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Clean Harbors common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.   By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

59.   As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of The Exchange Act Against the Individual Defendants

60.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.   The Individual Defendants acted as controlling persons of Clean Harbors within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had

the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Clean Harbors and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(b)     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

<u>**JURY TRIAL DEMANDED**</u>

Plaintiff hereby demands a trial by jury.

Dated:      December 16, 2003

**MOULTON & GANS, P.C.**

By: _/s/ Nancy Freeman Gans_
Nancy Freeman Gans, BBO #184540
33 Broad Street, Suite 1100
Boston, MA 02109-4216
Telephone: (617) 369-7979

**MILBERG WEISS BERSHAD
HYNES & LERACH LLP**
Steven G. Schulman
Peter E. Seidman
Andrei V. Rado
One Pennsylvania Plaza
New York, NY 10119-0165
Telephone: (212) 594-5300

**BRODSKY & SMITH, LLC**
Evan Smith
Marc L. Ackerman
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
Telephone: (610) 667-6200

**Attorneys for Plaintiff**

## PLAINTIFF'S CERTIFICATION

I, (Mr./Ms.) __Robert J Meyer__, ("Plaintiff") declare under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint and authorized the commencement of an action on Plaintiff's behalf.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in __CLHB__ (Company) securities during the Class Period specified in the Complaint are as follows:

| Date | # of Shares Purchased | # of Shares Sold | Price |
|---|---|---|---|
| 4/24/03 | 300 sh @ $13.50 | | $4072.99 |
| 8/14/03 | | 300 sh @ 6.7p | −$2010.90 |
| | | Loss | (2062.09) |

5. During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws. [Or, Plaintiff has served as a class representative in the action(s) listed below:]

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __12th__ day of __Dec__, 200__3__

Sign Name: _Robert J Meyer_
Print Name:
Address:
State, Zip Code:
County:
Country (if not USA):

Robert Meyer
627 Fairfield Cir.
Westfield, NJ 07090-2507

(908) 654-3654